UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-182-JBC

PEGGY JEAN PERRIN,                                                            PLAINTIFF,

V.                          MEMORANDUM OPINION AND ORDER

HARTFORD LIFE INSURANCE COMPANY,                              DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiff's motion for attorney's fee, costs and prejudgment interest (DE 18). The court, having reviewed the record and being sufficiently advised, will grant the plaintiff's motion.

I.  BACKGROUND

In this case arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 101 et seq., the plaintiff, Peggy Jean Perrin, sought long-term disability benefits from the defendant, Hartford Life Insurance Company. The plaintiff worked for Kentucky Central Life Insurance Company ("Kentucky Central") as a Customer Service Representative. AR 2. On her way to work on January 9, 1990, the plaintiff had a motor vehicle accident. AR 671. As a result, she underwent corrective back surgery and jaw surgery. *Id.* Following these operations, her doctor informed her that she had a permanent impairment rating of approximately 15%. AR 703. The doctor also recommended that she avoid repetitive and prolonged bending, pulling, lifting, or sitting activities. *Id.* Prior to

1

her accident, the plaintiff's duties at Kentucky Central demanded that she lift and carry up to ten pounds as often as once per day and up to five pounds as often as ten times per day, that she sit for 90% of the day, and that she be able to reach above and below her head frequently. AR 486, 736.

As a result of the accident, the plaintiff applied for long-term disability benefits from her employer under a policy issued by the defendant. After she satisfied the elimination period, the defendant initially approved her claim under the terms of her long-term disability benefits policy in early 1990. Pursuant to the policy, benefits are payable to the plaintiff if she is "totally disabled," which is defined as being "unable, solely because of accidental bodily injury or sickness, to engage in all the material and substantial duties of your occupation." AR 3. The defendant informed the plaintiff that benefits would be payable only so long as she remained "totally disabled." AR 3-4, 168.

In October 2000, after the plaintiff's examination by Dr. Alekzandr Mogilevski, the defendant concluded that Perrin no longer met the definition of disability. AR 47. She subsequently underwent a functional-capacity evaluation ("FCE") in March 2002, which was performed by Sherry Wesley. Ms. Wesley found that the plaintiff was able to work at the sedentary level for a maximum of two hours per day. AR 408. As the plaintiff's occupation required her to perform work over an eight-hour workday, she was still classified as "disabled." In August 2004, the plaintiff underwent a two-day FCE by Tara Long. Ms. Long concluded

2

that the plaintiff could maintain sedentary to light work for an eight-hour workday. AR 286. Thus she was no longer disabled under the policy's terms. AR 5. On September 17, 2004, based on that FCE evaluation, the defendant terminated the plaintiff's benefits under her policy.

The plaintiff appealed that decision. AR 223. As part of its review on appeal, the defendant sought updated medical records. Faced with conflicting evidence from the 2004 FCE and the statements of the plaintiff's treating physicians submitted with her appeal, the defendant sought an independent medical records review by Dr. Robert Marks, who concluded that the plaintiff's position was "at the sedentary level of effort." AR 88. On April 25, 2005, the defendant denied the plaintiff's appeal and upheld its termination of her benefits. AR 93-95. The defendant then permitted her to submit additional evidence of her disability because she took issue with the handling of her claim. After reviewing that additional evidence, the defendant adhered to its decision to terminate the plaintiff's benefits, and she commenced this lawsuit.

The court reviewed *de novo* the defendant's decision to terminate the plaintiff's benefits and concluded that the objective medical evidence in the administrative record showed that the plaintiff is unable to perform her own occupation. On September 6, 2007, the court found in favor of the plaintiff and awarded her the past-due benefits to which she is entitled under her long-term disability policy. The plaintiff also requested attorney's fees, costs and

prejudgment interest in her motion to reverse the administrative record. The plaintiff's instant motion supports that request.

## II. PREJUDGMENT INTEREST

"Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, [the Sixth Circuit has] long recognized that the district court may do so at its discretion in accordance with general equitable principles." *Ford v. Uniroyal Pension Plan,* 154 F.3d 613, 616 (6th Cir. 1998). Awards of prejudgment interest "are not punitive, but simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." *Id.* at 618; *see also E.E.O.C. v. Kentucky State Police Dept.,* 80 F.3d 1086 (6th Cir. 1996). In determining whether prejudgment interest is appropriate, "a finding of wrongdoing by the defendant is not a prerequisite to such an award." *Wells v. United States Steel,* 76 F.3d 731 (6th Cir 1996).

This court found that the defendant incorrectly terminated the plaintiff's benefits. During the course of her appeal and the course of this litigation the plaintiff was deprived of benefits that this court found she was entitled to under her long-term disability policy; therefore, the court finds that the plaintiff is entitled to an award of prejudgment interest for the lost interest value of money wrongly withheld from her.

This court has awarded prejudgment interest using the postjudgment interest

rate set forth in 28 U.S.C. § 1961.[1]  *See Brooking v. Hartford Life & Accident Ins. Co.,* 2007 WL 781333 (E.D. Ky. 2007).  "[I]n situations involving complicated calculations of a stream of payments occurring over a long period of time where the interest rates are not static, an average or 'blended' rate may be used in calculating the accrued pre-judgment interest."  *Brooking,* at * 4.  The court will use a blended rate to determine the pre-judgment interest in this case.  The plaintiff's benefits were terminated on September 17, 2004, and the court awarded the plaintiff past-due benefits on September 6, 2007.  Based on the plaintiff's suggestion, the court will apply the following blended rates: 3.07% for September 2004 to August 2005; 4.69% for September 2005 to August 2006; and 4.91% for September 2006 to August 2007.  Using the plaintiff's calculations set forth in her exhibit to her motion for fees,[2] the court will enter judgment of $1,813.91 in prejudgment interest.

### III.   ATTORNEY'S FEES

"In an action by a plan participant, beneficiary, or fiduciary, the court, in its discretion, '*may* allow a reasonable attorney's fee and costs of action to *either*

---

[1]Under §1961, "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

[2]The defendant argues that the plaintiff has not established that interest should be compounded from year to year, but also notes that the recalculation would result in a nominal change.  Thus, the defendant does not ask the court to engage in a recalculation.

5

party.'" *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005) (quoting 29 U.S.C. § 1132(g)(1)) (emphasis in *Bryant*). The Sixth Circuit "has rejected a presumption that attorneys' fees should ordinarily be awarded to the prevailing plaintiff," and district courts have substantial discretion in making attorney's fee awards under §1132. *Bryant*, 410 F.3d at 851. The court's discretion in awarding attorney's fees is guided by a five-factor test:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Bryant*, 410 F.3d at 851; *see also Sec. of Dep't of Labor v. King*, 775 F.2d 666, 669-70 (6th Cir. 1985). These five factors "are not statutory . . . and need not be parsed as though they were"; rather, they "simply summarize considerations that have sometimes been deemed significant in other cases" and represent a flexible set of guidelines for the court's discretion. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 937 (6th Cir. 1996). Because "no single factor is determinative . . . the district court must consider each factor before exercising its discretion." *Moon v. Unum Provident*, 461 F.3d 639, 642-43 (6th Cir. 2006). Thus, the court will look at each factor in turn.

**A. The Degree of the Opposing Party's Culpability or Bad Faith**

In applying the *de novo* standard of review, this court made no finding as to

whether the defendant acted arbitrarily and capriciously in terminating the plaintiff's benefits. The defendant therefore argues that by merely weighing the evidence *de novo,* and thus assigning its own weight to the evidence, the court found only that the decision was incorrect but not that the decision was done in bad faith or with a high degree of culpability. The court need not determine whether the defendant's conduct amounts to bad faith, because either bad faith or culpability satisfies this first factor.

In finding for the plaintiff, this court noted that "nearly every treating physician that has examined her has stated, at one time or another, that she is unable to perform the requirements of sedentary employment." DE 17 at 15. The court also noted that "although the defendant was not required to give any special weight to the opinions of the plaintiff's treating physicians, those opinions should at least [have been] considered in the same manner as those physicians hired by the defendant," and the defendant erred in not assigning those opinions greater weight. *Id.* at 16. Further, the court found that "the objective results of the FCE performed in 2004 support[ed] a finding that the plaintiff could not perform her own occupation." *Id.* at 17. Finally, this court concluded that the defendant erred in relying on the 2004 FCE and Dr. Marks's opinion for the conclusion that the plaintiff had the ability to hold a full- or part-time job, as they were inconsistent with the evidence and based on an unrealistic appraisal of the plaintiff's ability to work on a long-term basis. *Id.* at 18-19. Based on the defendant's disregard for

7

objective medical evidence, the court finds that the defendant was highly culpable, and thus, this factor weighs in favor of an award of attorney's fees. *See Plummer v. Hartford Life Ins. Co.,* 2007 WL 838926 (S.D. Ohio 2007)(finding plaintiff entitled to benefits after *de novo* review, court held that defendant was highly culpable, in part because its termination of benefits was not well-founded and it relied upon flawed medical opinions); *Brooking,* 2007 WL 781333 (where the defendant ignored substantial evidence in the administrative record, court is required to find the defendant culpable).

**B.  Ability to Satisfy an Award**

The defendant does not dispute that it has the ability to pay a fee award. While this factor weighs in the plaintiff's favor, "this factor alone is not dispositive."  *Foltice,* 98 F.3d at 937.

**C.  Deterrent Effect**

An award of attorney's fees serves as a deterrent to mishandling claims, specifically because "a stiffer penalty encourages plan administrators to alter their behavior with respect to employee appeals."  *Gatlin v. National Healthcare Corp.,* 16 F. App'x 283, 290 (6th Cir. 2001).  Further, "a fee award serves as a deterrent to conclusory statements that are devoid of specific and fact-supported reasons for denial of benefits."  *Powell v. Premier Mfg. Support Services, Inc.*, 2006 WL 1529470 (M.D. Tenn. 2006); *see also Plummer*, 2007 WL 838926, *2("The need to deter [the defendant] and other insurance companies from denying benefits on

the basis of a perfunctory analysis is strong."). This court found that the defendant incorrectly relied upon opinions which were inconsistent with objective medical evidence. DE 17. For instance, the court noted that "the examiner found the plaintiff could sit for only 34-66% of a workday and that the plaintiff demonstrated discomfort while sitting, *see* AR 290, she nonetheless stated that the plaintiff had a 'good tolerance to activities involving standing and sitting' and that the plaintiff could maintain sedentary to light work for an eight-hour workday." DE 17 at 17. In terms of deterrence, the defendant will take a closer look at the administrative record and its denial decisions if it is faced with more than the prospect of merely reinstating benefits. *See Elliott v. Metropolitan Life Ins. Co.,* 2007 WL 1558519 (E.D.Ky. 2007)("Companies would likely take a much closer look at denial decisions, and the presentation of that decision, if forced to take into account the possibility that fees will be awarded"). Thus, this factor weighs in the plaintiff's favor.

**D. Conferring a Common Benefit on all ERISA Plan Beneficiaries**

Under the fourth factor, the court determines whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA. The plaintiff argues that an "award of attorney's fees would benefit other similarly situated employees whose benefits were denied without a reasoned basis for denial." *Powell,* 2006 WL 1529470, *10. But the defendant's denial without a reasoned

9

basis has already been taken into account and should not be double-counted against the defendant.  Further, the record indicates that the plaintiff did not attempt to confer a common benefit to a class of plan participants by filing this action.  *See Foltice,* 98 F.3d 933, 937 (finding in favor of defendant as to fourth element where the litigation did not result in the creation of a "common fund" within the meaning of the common law doctrine).  Further, her lawsuit did not resolve a significant legal question regarding ERISA.  Thus, this fourth factor weighs in favor of the defendant.

**E. The Relative Merits of the Parties' Positions.**

Finally, the court examines the relative merits of the parties' positions.  Reviewing the record *de novo,* the court found that the defendant's actions in terminating the plaintiff's benefits were in contrast to the objective medical evidence in the administrative record.  The court's decision reveals that, stripped of the presumption of deference accorded it in a deferential review, *see Hoover v. Provident Life and Acc. Ins. Co.,* 290 F. 3d 801, 809 (6th Cir. 2002), the administrative decision lacks merit when compared to the plaintiff's position.  This factor thus weighs in the plaintiff's favor.

Under a balancing of the factors examined above, this court finds that the first, second, third and fifth factors – all but one – weigh in favor of the plaintiff and, therefore, weigh in favor of awarding attorney's fees to the plaintiff.

**IV.    AMOUNT OF THE ATTORNEY'S FEE AWARD**

Having determined that an award of attorney's fees is appropriate in this case, the court must determine what amount of fees is reasonable. "It is well settled that the 'lodestar' approach is the proper method for determining the amount of reasonable attorney's fees." *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,* 46 F.3d 1392, 1401 (6th Cir. 1995). The court determines the amount based on the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424 (1983). The plaintiff seeks attorney's fees of $5,077.50. The fee request is based on a rate of $125 per hour[3] for 40.62 hours.

A reasonable hourly rate should be "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stetson,* 465 U.S. 886, 896 n. 11 (1984). The plaintiff contends that her attorney is one of the few attorneys in Kentucky who regularly handle ERISA cases. This court has previously found a "requested rate of $225.00 per hour [was] reasonable for an experienced employment law practitioner in Kentucky." *Napier v. Hartford Life Ins. Co.,* No. 02-497-KSF (E.D. Ky. Filed Oct. 16, 2003). The court finds that the rate of $125 per hour is a reasonable rate. The 40.62 hours spent in preparing this case was also reasonable in light of the length of the record and the specialized nature of this case. Additionally, the defendant does not contest the plaintiff's lodestar calculation.

---

[3] Plaintiff's counsel submitted an affidavit stating that his hourly rate at the time the plaintiff signed her fee agreement was $125. DE 18-3.

Therefore, the court finds that the plaintiff is entitled to $5,077.50 in attorney's fees.

## V. POSTJUDGMENT INTEREST

Under 28 U.S.C. § 1961, "interest shall be allowed on any money judgment in a civil case recovered in a district court." *See Hoover v. Provident Life & Acc. Ins. Co.,* 290 F.3d 801, 810 (6th Cir. 2002)(applying postjudgment interest rate in ERISA case). "The Sixth Circuit has recognized that post judgment interest should be awarded on the entire amount of the judgment, to include the prejudgment interest element of the damages award, as well as any later awarded attorney fees or costs." *Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.,* 521 F. Supp. 2d 661, 692 (S.D. Ohio 2007) (citing *Caffey v. Unum Life Ins. Co.,* 302 F.3d 576, 586, 589 (6th Cir. 2002)). Postjudgment interest is "calculated at a rate equal to the weekly average 1-year constant maturity Treasury yield. . . for the calendar week preceding the date of judgment." 28 U.S.C. § 1961. Further, it is calculated from the date of the entry of judgment and shall be computed daily until date of payment. *Id.* The court grants the plaintiff's request for postjudgment interest to be calculated in accordance with 28 U.S.C. § 1961.

## VI. COSTS

29 U.S.C. §1132(g)(1) provides that the court "may allow a reasonable attorney's fee and costs of action to either party." The plaintiff requests costs in the amount of $179.34, which represents the costs for filing the complaint and

12

having the complaint served.  The defendant has not specifically objected to the plaintiff's request for costs; therefore, the court will award costs of $179.34.

**VII. CONCLUSION**

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for attorney's fees (DE 18) is **GRANTED.**  Specifically, the court finds the plaintiff is entitled to attorney's fees in the amount $5,077.50, costs in the amount of $179.34, and prejudgment interest in the amount of $1,813.91, or a total amount of $7,070.75.  Further, the plaintiff is entitled to postjudgment interest in accordance with 28 U.S.C. § 1961.

Signed on  July 7, 2008



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY